## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL DUFFY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 09-198-SLR-SRF |
| | ) |
| KENT COUNTY LEVY COURT, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Plaintiff Michael Duffy ("Duffy" or "plaintiff"), who proceeds pro se,[1] filed this lawsuit

on March 26, 2009, alleging violations of the Americans with Disabilities Act ("ADA"). (D.I. 2,

25) Presently before the court are the following motions: the motion for summary judgment of

defendant Kent County Levy Court ("Levy Court" or "defendant") (D.I. 238), and plaintiff's

motion for injunctive relief (D.I. 237), motions to compel discovery (D.I. 241, 249), motion to

strike (D.I. 246), and motion for medical discovery (D.I. 253). For the reasons set forth below, I

recommend that the court deny plaintiff's motions and grant defendant's motion for summary

judgment.

---

[1] On July 1, 2011, the court entered an order for the Clerk of Court to attempt to refer
representation of plaintiff to a member of the Federal Civil Panel. (D.I. 195) Plaintiff was
represented by an attorney until May 9, 2013, when the court revoked the order appointing
counsel. (D.I. 214)

## II.    BACKGROUND[2]

On February 10, 2001, plaintiff purchased property located at 3028 Kitts Hummock

Road, Kent County, Delaware, for a sum of $500.00. (D.I. 239, Ex. A at Duffy 1213-15)

However, plaintiff did not record a deed or bill of sale for the property. (*Id.* at Duffy 1200-02)

In May 2008, a storm damaged plaintiff's property. Following the storm, inspectors from the

---

[2] The facts discussed herein are derived from the evidence on the record supplied by defendant unless otherwise noted. The facts are either undisputed, or plaintiff has failed to properly support his assertions. *See* Fed. R. Civ. P. 56(c) & (e). Plaintiff has not cited to particular parts of materials in the record in his answering brief. He admits receiving defendant's submission and has repeatedly indicated that he has reviewed and continues to review defendant's submission. (D.I. 250, 259)

Plaintiff was given ample time to develop a record of his own. On August 25, 2010, all of defendant's non-privileged documents related to plaintiff and his property were made available in their original format at defendant's offices. (D.I. 242 at ¶ 3; D.I. 186 at 12) Those documents were subsequently copied, bates stamped, and produced to plaintiff in the form of a CD that could be reviewed on a computer. (D.I. 242, Ex. A) Plaintiff acknowledged that he received these documents and indicated that he would be reviewing them. (*Id.*, Ex. B) In response to a series of motions to compel regarding defendant's production, the court ruled that defendant's response to plaintiff's discovery requests was sufficient. (D.I. 186 at 13)

Fact discovery closed for the first time on March 28, 2011. (D.I. 91) Plaintiff was subsequently appointed counsel on September 2, 2011 (D.I. 198), and the case was referred to the undersigned magistrate judge on May 2, 2012 (D.I. 203). Appointed counsel suggested a tentative plan for moving forward with additional discovery in March 2013 (D.I. 211 at 13:5 – 16:2), but the attorney-client relationship deteriorated and the order appointing counsel was revoked on May 9, 2013 (D.I. 214). On the same date, the court entered an amended scheduling order, setting a new discovery deadline of August 12, 2013. (D.I. 215) Plaintiff also made requests for information from defendant prior to the commencement of litigation, but then refused to accept the requested information when it was provided to him. (D.I. 239, Ex. A at Duffy 1086)

Plaintiff was also given ample time to respond to defendant's motion for summary judgment. Defendant filed the motion for summary judgment on September 11, 2013 in a form that was substantially similar to the original motion for summary judgment, which was filed and served upon plaintiff on April 28, 2011. (D.I. 166-67, 238-39) Plaintiff's deadline to respond was extended to October 18, 2013. (D.I. 244) Between September 11, 2013 and October 18, 2013, plaintiff submitted seven filings (including two responses to defendant's motion for summary judgment), collectively totaling forty-four (44) pages. (D.I. 241, 245, 246, 247, 248, 249, 250) These filings were often single-spaced, typed in small font, or otherwise noncompliant with the requirements for submission of briefs set forth in the Local Rules, although the court reviewed and considered each of them. Plaintiff's multiple filings within this five week period suggest that he is capable of filing a timely response.

Division of Inspections and Enforcement of the Kent County Department of Planning Services inspected a number of parcels in the communities affected by the storm, including plaintiff's property. (*Id.* at ¶ 2) One of the structures on plaintiff's property was condemned as unsafe in May 2008. (*Id.* at Duffy 1188)

By letter dated June 16, 2008, the Department of Planning Services notified the record owners of the property that the property was condemned, and gave the record owners ninety days to comply with the condemnation order. (*Id.* at Duffy 1184-86) After the letter was returned as undeliverable, defendant posted the notice on the structures located at the property. (*Id.* at Duffy 1182-83) Plaintiff contacted defendant on June 24, 2008 with a series of questions about the procedure. (*Id.* at Duffy 1177-80) On June 30, 2008, defendant attempted to explain the process to plaintiff and provide him with written information, but plaintiff declined to accept the information offered to him. (*Id.* at Duffy 1175)

Plaintiff identified himself as disabled and requested assistance under the ADA on September 9, 2008. (*Id.* at Duffy 1162) Defendant informed plaintiff that he would be granted an extension of time for correction of violations at the property if he recorded a deed or bill of sale by the deadline of October 3, 2008. (*Id.* at Duffy 1156, 1149) The deed transferring legal ownership of the property to plaintiff was recorded on October 3, 2008. (*Id.* at Duffy 1129-42)

On October 2, 2008, an inspection of the property was made at plaintiff's request. (*Id.* at Duffy 1108) The inspection revealed that an accessory structure on the property was also unsafe, and the building was condemned. (*Id.*) Plaintiff was given ninety calendar days to comply with the condemnation order. (*Id.* at Duffy 1109)

Beginning in October 2008, a volunteer architect assisted plaintiff in navigating the demolition and rebuilding process. (*Id.* at Duffy 1113, 1093 ¶ 3, 1006-09, 987-95) On October

3

23, 2008, defendant met with plaintiff to explain the demolition and rehabilitation process. (*Id.* at Duffy 1030-35) Defendant outlined the steps needed to apply for a demolition permit or a temporary shelter permit and also discussed what would be needed to request an extension of the demolition deadline. (*Id.*) Defendant also offered to assign a staff member to help plaintiff navigate the process in response to his ADA accommodation request. (*Id.* at Duffy 1093-94) Plaintiff was advised that if he took no action within ninety days of the condemnation order, defendant would proceed with the demolition and place a lien on the property to cover the cost. (*Id.*)

Also in October 2008, plaintiff submitted a request for a dumpster. (*Id.* at Duffy 1143) The request was denied because defendant does not provide county-funded dumpsters for individual property owners. (*Id.* at Duffy 1093) Defendant had provided two dumpsters in September 2008 for a planned community flood clean up weekend, but defendant does not provide county-funded dumpsters to individual property owners. (*Id.* at ¶ 9) Plaintiff has presented no evidence indicating that county-funded dumpsters were provided to individual homeowners.

Plaintiff continued to communicate with defendant via email during November 2008. (*Id.* at Duffy 1021-25) Defendant reiterated that it would assist plaintiff with the permitting process, but an extension of the demolition deadline would not be granted unless significant progress toward rehabilitation or demolition was shown. (*Id.* at Duffy 1021) Plaintiff was notified that he had until February 7, 2009 to comply with the condemnation notice. (*Id.*)

On January 13, 2009, plaintiff initiated a civil action against defendant in the Court of Chancery, requesting injunctive relief to preclude defendant from demolishing the structures. On January 20, 2009, plaintiff's architect recommended demolishing and rebuilding the structures,

4

and asked defendant how to apply for a demolition permit.  (*Id.* at Duffy 988-95)  Defendant

determined that plaintiff had taken some steps towards compliance with the condemnation order

and suspended the February 7, 2009 compliance deadline.  (*Id.* at Duffy 987)

Plaintiff made no further progress towards obtaining a demolition permit until defendant

issued another notice of intent to demolish the structures as of June 23, 2009.  Plaintiff applied

for and was granted a demolition permit on July 6, 2009, which gave him thirty days to complete

demolition.  (*Id.* at Duffy 856-57)  During the demolition period, volunteers from plaintiff's

church[3] demolished the front structure and a portion of the rear structure, but did not complete

demolition of the rear structure.  (*Id.* at ¶ 18)  When contacted by defendant, the volunteers

indicated that they did not plan to complete the demolition.

Defendant provided notice of its intent to proceed with the remaining demolition in the

ongoing Court of Chancery litigation, and caused the remaining structure to be demolished in

early December 2009 after soliciting bids from contractors.  (*Id.* at Duffy 758)  The demolition

cost $1,400, and that amount has become a lien on the property.  (*Id.* at Duffy 756)  Plaintiff did

not submit an application for a building permit or a temporary shelter permit.  (*Id.* at Duffy 943,

1011)

Plaintiff initiated the present case on March 26, 2009, and filed an amended complaint on

September 9, 2009.  (D.I. 2, 25)  The complaints, filed pursuant to 28 C.F.R. Parts 36, 204, 305,

and 501, allege disability discrimination and seek enforcement of Title II of the Americans with

Disabilities Act ("ADA").

---

[3] The record suggests that the relationship between plaintiff and the volunteer architect
was terminated following the architect's recommendation that the structures be demolished.

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir.1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris,* 550 U.S. 372, 380 (2007); *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some

6

evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. at 322.

## B.    Analysis[4]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a prima facie claim under Title II of the ADA, plaintiff must allege that: "(1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Jordan v. Delaware*, 433 F. Supp. 2d 433, 439 (D. Del. 2006).

Plaintiff's ADA claim fails because he has not produced sufficient evidence to create a material issue of fact as to whether he suffers from a disability within the meaning of the ADA. *Marinelli v. City of Erie*, 216 F.3d 354, 363 (3d Cir. 2000); *Dismore v. Seaford Sch. Dist.*, 532 F.

---

[4] Because plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). However, "[m]erely because a non-moving party is proceeding *pro se* does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *See Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000). The Rule 56(e) standard was highlighted for plaintiff in this court's order dated September 12, 2013. (D.I. 240)

Supp. 2d 656, 661 (D. Del. 2008). A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A) (2010). The disabling impairment must be one of "permanent or long-term impact" that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). "It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).

Plaintiff claims to suffer from Parkinson's Disease, which allegedly affects his ability to speak and communicate. However, no evidence on the record supports plaintiff's claim that he suffers from Parkinson's Disease in a manner that substantially limits his ability to communicate. In fact, the evidence submitted by plaintiff suggests that he does not suffer from Parkinson's Disease, and his ability to communicate is not permanently impaired. Plaintiff's neurologist, Dr. Stanley Fahn, treated plaintiff since 1986 and initially diagnosed plaintiff with Psychogenic Parkinsonism. (D.I. 141 at 7) However, Dr. Fahn noted in a letter dated February 15, 2011 that

> the diagnosis of underlying Parkinson's disease (PD) did not stand the test of time. PD worsens over time, and Mr. Duffy's symptoms did not worsen. Instead, he has improved over time. A repeat F-DOPA PET scan was obtained on September 10, 2011. This scan was normal, proving the absence of underlying Parkinson's disease to explain Mr. Duffy's symptoms.

(*Id.*)

Plaintiff also submitted evidence from his speech therapist, which indicates that plaintiff is functional in basic conversation skills, has intelligible speech, and has only episodic problems with communication that are associated with the timing of his medication, as opposed to an underlying condition. (D.I. 165) The evidence produced by plaintiff supports defendant's

8

position that plaintiff does not suffer from Parkinson's Disease in a manner that limits his ability to communicate.

Plaintiff submitted other documentary evidence in an attempt to bolster his disability claim. (D.I. 190, 197) However, this evidence does not create a genuine issue of material fact regarding whether plaintiff suffered from Parkinson's Disease in a manner that substantially limited his ability to communicate. Documents from the Delaware Division of Vocational Rehabilitation and the Social Security Administration do not identify Parkinson's Disease or difficulty with communication. (D.I. 190) A home health aide care plan form dated February 22, 2011 indicates that plaintiff communicates in English, but does not identify "hard of hearing," "speech difficult to follow," or "uses writing to communicate" as characteristics that would describe plaintiff. (*Id.*) Notes from an occupational therapist taken in 2009 and 2010 identify plaintiff's underlying diagnosis of Parkinson's Disease based on Dr. Fahn's 1986 diagnosis, but the occupational therapist specifically notes that plaintiff did not take medication for Parkinson's Disease at the time he received occupational therapy, more than twenty years after the initial diagnosis. (*Id.*) A 1997 letter from Lieba Kaplan, a licensed clinical social worker, describes plaintiff as "reality based, articulate, contactful, self-disclosing . . ." (*Id.*)

Plaintiff specifically references the medical records of Dr. Amy Colcher of the Movement Disorders Center at Pennsylvania Hospital in support of his arguments. (D.I. 253 at 6) In a letter dated January 28, 2005, Dr. Colcher identifies Dr. Fahn's 1986 diagnosis of plaintiff's Parkinson's Disease, and notes that plaintiff has not seen anybody for treatment of his Parkinson's Disease since he stopped treating with Dr. Fahn in 2001. (D.I. 197) It does not appear from the record that Dr. Colcher herself actually performed any objective medical tests to confirm the diagnosis made by Dr. Fahn. (*Id.*) Dr. Colcher describes plaintiff's primary

complaint as tremors, and her treatment of him appears to be limited to this symptom. (*Id.*) The only treatment notes from Dr. Colcher that are contained in the record are undated, and they merely state "PD – Worsening." (D.I. 190) A reasonable jury could not credit this evidence over Dr. Fahn's lengthy treatment history with plaintiff and his subsequent rescission of the initial diagnosis based on the lack of progression of this degenerative disease.

The specific conditions for which plaintiff seeks an ADA accommodation are not supported by the medical evidence on the record, and plaintiff has failed to raise a genuine issue of material fact regarding his alleged disability. Even if the court were to determine otherwise, plaintiff's ADA claim would fail on the remaining prongs of the analysis for the reasons that follow.

Plaintiff fails to show that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities. Plaintiff claims that he submitted five permit applications, which were all denied. (D.I. 250 at 2) However, the evidence submitted by defendant shows that plaintiff was granted a demolition permit after he submitted a proper application. (D.I. 239, Ex. A at Duffy 857) The evidence further demonstrates that, despite having numerous communications with defendant about how to submit additional permit applications, plaintiff never actually submitted applications for a temporary shelter permit or a building permit. (*Id.* at Duffy 1021, 1011, 943) It is undisputed that plaintiff submitted a permit application for a dumpster, which was denied, but the evidence on the record indicates that defendant did not provide dumpsters to individual property owners. (*Id.* at Duffy 1143, Keifer Aff. at ¶ 9) Plaintiff has not presented any evidence indicating that dumpsters were made available to individual property owners upon application, and no other permit applications made by plaintiff were denied.

Contrary to plaintiff's assertions that defendant refused to serve him, the evidence on the record shows that defendant's employees provided detailed responses to plaintiff's numerous inquiries and offered to meet with him on a number of occasions to further clarify the procedures. (*Id.* at Duffy 1175, 1021, 1011, 943, 1093, 1030-35) Defendant also granted plaintiff a substantial number of extensions in an effort to give him every opportunity to comply with the procedures. (*Id.* at Duffy 1156, 1149, 1030-35, 1021, 987) In addition, defendant designated an employee to assist plaintiff in navigating the permitting process in response to his ADA accommodation request. (*Id.* at Duffy 1093-94) Instead of accepting defendant's assistance with the process, the record shows that plaintiff often resisted defendant's efforts. (*Id.* at Duffy 948) ("I hope next time we meet you [sic] able to engage your brain. You look mighty silly without it."). In light of the foregoing evidence, the court concludes that there is no genuine issue of material fact as to whether plaintiff was denied the benefits of defendant's services.

Plaintiff has also failed to establish causation. The evidence on the record uniformly indicates that multiple sources deemed the buildings on plaintiff's property to be structurally unsound. (*Id.* at Duffy 1188, 1108, 988-95; Keifer Aff. at ¶ 21) Moreover, at the time the property was initially condemned, defendant was not aware that plaintiff was the property owner. (*Id.* at Duffy 1182-86) Plaintiff cannot show that defendant targeted him by condemning the property because of his disability when the property was condemned prior to defendant's knowledge that plaintiff held any claim to the property. Nor can plaintiff show that defendant denied his permit applications due to his disability when plaintiff's application for a demolition permit was granted, his dumpster application was denied for the reasons previously explained, and plaintiff failed to submit any additional permit applications for defendant's consideration. In light of these undisputed facts, the court concludes that no genuine issue of material fact exists

11

regarding causation, and plaintiff's ADA claim should be denied as a matter of law.

## IV. PLAINTIFF'S MOTIONS AND OTHER FILINGS

Plaintiff has filed a series of motions and other filings raising a broad spectrum of issues. Many of plaintiff's allegations and requests for relief are moot in light of the court's recommendation on summary judgment. Moreover, a number of the issues raised by plaintiff have been addressed in previous court orders and need not be revisited by the court.[5] To the extent that plaintiff's concerns regarding the fairness of the discovery process affect the ruling on summary judgment, the court has addressed these concerns *supra* at footnote 2.

## V. CONCLUSION

For the reasons stated above, I recommend that the court DENY plaintiff's motions (D.I. 237, 241, 246, 249, 253) and GRANT defendant's motion for summary judgment (D.I. 238). As a result, plaintiff's action should be dismissed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The objections and responses to the objections are limited to five (5) pages each.

---

[5] Issues previously addressed by the court include, but are not limited to, revocation of the order appointing legal counsel (D.I. 214, 225), the appointment of a disability aide (D.I. 186), and attempts to obtain legal guidance and assistance from the court (D.I. 219).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available at http://www.ded.uscourts.gov.

Dated: February 11, 2014

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

13